## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No.: 1:21-cr-00386-TNM** |
| | **:** | |
| **WILLIAM BLAUSER, Jr.** | **:** | |
| | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence William Blauser, Jr. to three months home detention, thirty-six months of probation, 60 hours of community service, $500 in restitution, and the mandatory $10 special assessment.

### I.      Introduction

The defendant, William Blauser, Jr., a 75-year-old Navy veteran, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars of property damage.

Blauser pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.  As explained herein, a period of home detention is appropriate in this case because (1) Blauser pushed his way through the East Rotunda door and (2) he is captured on CCTV having some physical contact with law-enforcement as they

1

were trying to get people to exit the Capitol Building. He lowered his shoulder a bit and pushed into law-enforcement to apparently get access to co-defendant Bauer and extricate her. This conduct merits home detention, even though Blauser did not personally engage in an act of violence against an individual or destroy any property, and even though he accepted responsibility after charges were brought against him. These aggravating factors and the totality of Blauser's actions place him in the range of defendants for whom the government has recommended incarceration. The government does not do so here considering the defendant's age, the defendant's complete lack of contacts with the criminal justice system throughout his long life, and the fact that the defendant appears to have accepted responsibility for his actions. Further, the government states that Blauser's efforts to restrain co-defendant Pauline Bauer's confrontation with police in the Rotunda is an important mitigating factor to explain why the government is not seeking active incarceration.

The Court must also consider that Blauser's conduct on January 6, like that of thousands of others, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to breach the Capitol building and delay the election certification vote for hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Blauser's participation in a riot that actually succeeded in halting the Congressional certification combined with the Blauser's forced entry into the Capitol Building and resistance of law-enforcement efforts renders a period of home detention both necessary and appropriate in this case.

## II.       Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 77 (Statement of Offense), at 1-6. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Blauser's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Blauser traveled to Washington, D.C., from his residence in Kane, Pennsylvania to attend the "Stop the Steal" rally.  The bus Blauser rode was one of two rented for the purpose of transporting people to the rally from Elk County, Pennsylvania.

The East Rotunda Door area through which Blauser gained entry was initially breached at approximately 2:25 p.m., and then again at 2:38 p.m. Blauser and co-defendant Pauline Bauer pushed through the door at approximately 2:43 p.m.



Once inside, Blauser and Bauer made their way into the Rotunda.



At one point in the Rotunda, Pauline Bauer can be seen and heard confronting law-enforcement and screaming "bring them out . . . they need to hang."  Blauser can be seen with his hand on Bauer's shoulder pulling her back away from the officer.



A short time later, Bauer again confronts law-enforcement and says "bring that fucking bitch out here now."  Bauer says "we're coming in if you don't bring her out."  When law-enforcement tries to get Bauer to back up, she says "Fuck you, you back up" and pushes law-enforcement.  At that point, Blauser grabs Bauer's arm and pulls her back.



At approximately 3:02 p.m., U.S. Capitol Police started forcing people out of the Rotunda, and Blauser resisted efforts to get him to immediately leave.



At one point, Blauser lowered his shoulder a bit and pushed back into law enforcement to help extricate co-defendant Pauline Bauer.



At approximately 3:15:39 officers were continuing to push Blauser, Bauer, and others out of the Rotunda.



Shortly after 3:21, Blauser left the Capitol Building.



*The Charges and Plea Agreement*

On May 19, 2021, Blauser was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).   On June 4, 2021, Blauser was charged by Indictment with the same offenses. On November 15, 2021, he pleaded guilty to Count Five in the Indictment, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(G).  By plea agreement, Blauser agreed to pay $500 in restitution to the Department of the Treasury.

**III.     Statutory Penalties**

Blauser faces sentencing on a single count of 40 U.S.C.  § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Blauser faces up to six months of imprisonment and a fine of up to $5,000.[1]  Blauser must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)**

---

[1] Because Blauser has pled guilty to a petty offense, a term of supervised release is not authorized. *See* 18 U.S.C. § 3583(b)(3).

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of home detention.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history that defies comparison to other events. It represented a grave threat to our democratic norms and was the only the second time in our history when the building was literally occupied by hostile participants.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, the Court must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant

entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had the defendant personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

As a Navy veteran, Blauser was or should have been aware of the great jeopardy posed by violent entry into the Capitol by the rioters and of the violent force required to overcome the police who were guarding the Capitol in order make that entry into the Capitol.

Blauser entered the building not long after it was breached.  Police officers were generally in his path on the outside of the door as he approached the East Rotunda doors.  There were also clear signs of violent entry.  The window to the door was smashed out.  Blauser also spent a significant amount of time in the Capitol Building itself, staying for approximately 40 minutes. When law-enforcement officers started pushing people towards the exit, Blauser resisted. Laudably, Blauser did restrain, or attempt to restrain, Bauer from acts of aggression against law-enforcement officers.  He restrained his fellow rioter, Pauline Bauer, twice when she very aggressively confronted police officers in the Rotunda and demanded that someone be hanged. This conduct distinguishes Blauer's entry from others who failed to restrain other rioters from

confronting law enforcement.  Accordingly, the nature and the circumstances of this offense establish the need for a sentence of home detention in this matter, but not incarceration.

### B.  Blauser's History and Characteristics

Blauser has no criminal history during his seventy-five years.  Blauser's military service is impressive, serving with distinction and valor during the Viet Nam war. From September 1965 to June 1969, Blauser was enlisted with the United States Navy. His highest rank and rank at separation was E-4. He received several ribbons and medals, most notably a Purple Heart and Navy Commendation medal with Combat Valor.

Blauser is now suffering from a range of medical problems, including PTSD, which may have its roots in his military service. Pre-Sentence Report, ¶¶  56, 61.

At the same time, Blauser's prior military service renders his conduct on January 6 all the more troubling.  As a former United States Navy service member, Blauser knew that one's disagreement with the actions of government officials does not bestow a right to enter restricted government buildings.

This is the rare case where the mitigating factors of the defendant's age, poor health and military service in Viet Nam counsel strongly against a sentence of incarceration.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House

sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. The violence at the Capitol on January 6 was intended by many of the rioters to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

Oversight    and    Reform    Committee    (June    15,    2021),    available    at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Blauser's actions in forcibly entering the Capitol during the riot clearly demonstrate the need for specific deterrence for this defendant. Home detention, significantly less intrusive than an active jail sentence, is warranted here.

**The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[3] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment.  The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[4]  *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth); *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (similar statement by Judge Friedman).

The government and the sentencing courts have made meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention. Blauser's conduct clearly falls in the latter category.

Blauser has pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.  This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18

---

[4]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), and whether he has prior military service—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id*.; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences."). In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders

similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of the legislative branch of the federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and the large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may consider the sentences imposed on Gary Wickersham for reference. D.D.C. Crim. No. 21-cr-606 (RCL). Defendant Wickersham, like Blauser, is a veteran and was 81 years old with no criminal record. Although Wickersham did not personally engage in violence, he too struggled with law-enforcement and resisted efforts to remove him from the Capitol. Unlike Blauser, Wickersham did not restrain fellow rioters from confronting police. The Court imposed a period of probation for three years, three months of home detention, restitution, and a $2,000 fine.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence William Blauser, Jr. to three months home detention, a three year term of probation, 60 hours of community service, $500 in restitution, and the mandatory $10 special assessment.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing home detention, but not for a lengthy period, as a consequence of his behavior, while recognizing his acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

16

*/s/ James D. Peterson*
JAMES D. PETERSON
VA Bar 35373
James D. Peterson
Trial Attorney
Criminal Division
United States Department of Justice
1331 F Street N.W.
6th Floor
SAUSA
U.S. Attorney's Office for the District of Columbia
Washington, D.C. 20530
(202) 353-0796
James.d.peterson@usdoj.gov